**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MARK A. HILL,**

      **Petitioner,**　　　　　　　　　　**CASE NO. 2:11-CV-755**
　　　　　　　　　　　　　　　　　　**JUDGE GRAHAM**
      **v.**　　　　　　　　　　　　**MAGISTRATE JUDGE KING**

**ROBIN KNAB, WARDEN,**
**Chillicothe Correctional Institution,**

      **Respondent.**
**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the *Petition,* Doc. No. 3, Respondent's *Return of*

*Writ,* Doc. No. 12, Petitioner's *Traverse,* Doc. No. 18, and the exhibits of the parties. For the

reasons that follow, Petitioner's *Motion to Expand the Record,* Doc. No. 17, is **GRANTED** in part

and **DENIED** in part. The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case as follows:

> On the evening of March 4, 2008, Hill and his friend, Rondale
> Massey ("Rondale"), arrived at Brew-Stirs shortly after 8:00 p.m. and
> began drinking pitchers of beer. Hill had consumed approximately
> seven alcoholic beverages that day before arriving at Brew-Stirs.
> Sometime after 11:00 p.m., Michael [Newman] and his girlfriend,
> Angela Theado ("Angela"), Kyle [Smith] and his girlfriend, Emily
> Boyle ("Emily"), and several of Angela's co-workers arrived at
> Brew-Stirs to sing karaoke. Hill testified that, during the course of the
> evening, he flirted with the girls in that group. Toward the end of the
> evening, Hill bought Emily a shot, which she accepted. There was no
> conflict in the bar throughout the evening.

After last call, Hill followed Emily outside, where Emily immediately joined Michael and Angela who were standing to the left of the front door. There was testimony that Kyle was also outside, leaning against the building, although Hill did not see him. Sensing that Emily wanted someone to intervene between her and Hill, Michael stepped in front of Hill, and a struggle ensued. Michael testified that the two began to struggle after Hill grabbed Michael's jacket. Hill described the struggle as "a shoving match," but did not know who started it. (Tr. 449, 493.) Hill testified that, during the shoving match, he was "suckerpunched from the left side of [his] body in the face" by an unknown person and grabbed Michael to keep his balance, but he was being forced toward the ground. (Tr. 449.) At that moment, Hill grabbed the box cutter that he routinely carried in a sheath on his belt and, with his right hand, threw a punch with it. Michael initially thought he had simply been punched, but, when Hill raised his arm again, he saw the box cutter and began to taste blood. Michael was cut from the apple of his left cheek down through his upper lip. Michael denied that anyone else was involved in the struggle before Hill cut him.

After being cut, Michael grabbed Hill's wrist and tried to pin him to the wall, at which time Kyle intervened and tried to tackle Hill and Michael from the left. In the fall, Michael lost his grip on Hill's right hand, which held the box cutter, and he suffered a cut on his hand. With his right hand free, Hill began slashing with the weapon. Hill testified, "I had been forced physically to the ground by two individuals, so I guess I'm swinging both hands, basically trying, I guess, to punch fight" with the box cutter. (Tr. 455.) Michael testified that Hill slashed at Kyle's head, that "Kyle was retreating and holding his arms with his elbows bent around his head," and that Kyle exclaimed, " 'I'm cut.'" (Tr. 53-54.) Kyle testified that he felt the left side of his face become "really hot" and, looking down, noticed his coat was "soaked with blood." (Tr. 192.) Kyle sustained two approximately two-inch cuts above his right ear, under the hairline, and the cuts required staples.

As Hill was slashing at Kyle, Michael flipped Hill face down onto the ground, elbowed him in the back of the head three to four times, knocked the box cutter from his hand, and hit him three to four more times in the back of the head to ensure "that he was unconscious and not going to continue the fight." (Tr. 55.) After Michael backed away from Hill, taking Angela with him, Rondale picked Hill up, and the two walked southbound on the sidewalk, leaving footprints in the snow. After the police arrived and spoke with witnesses, Officer

> Todd Aiello followed the footprints in the snow to a parked white van several streets away. One set of footprints went toward the driver's side of the van, and the other went toward the passenger side. Officer Aiello observed two men asleep in the van and called for backup, after which both Hill and Rondale were arrested. Despite initially lying to detectives about his involvement in the fight, at trial Hill admitted his involvement, but argued that he acted in self-defense.[1]

*State v. Hill*, No. 09AP-398, 2010 WL 1510199, at *1-2 (Ohio App. 10th Dist. April 15, 2010).

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> 1. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL[.]
>
> 2. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]
>
> 3. APPELLANT'S GUILTY VERDICT WAS STATUTORILY DEFECTIVE AND VOID[.]

*Id.* at *2. On April 15, 2010, the appellate court affirmed the judgment of the trial court. *Id.* On

August 25, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Hill*,

126 Ohio St.3d 1549 (2010).

On May 17, 2010, Petitioner filed an application for reconsideration of the appellate court's

---

[1] Petitioner objects to the factual findings of the state appellate court. Petitioner states that evidence indicated that he exited the bar with Emily and Angela, and that Michael followed Kyle outside to calm Kyle down. Petitioner complains that the state appellate court excluded material facts from its factual summary, including evidence indicating that Petitioner was severely intoxicated, that Michael "freak[ed] out on him" as he exited the bar, that Kyle was "really upset" that his girlfriend had accepted a drink from Petitioner, that Angela assaulted Petitioner with the front door of the bar, and that Michael and Kyle stomped Petitioner on the ground. Petitioner again argues, as he did in the state courts, that he acted in self defense. *See Petitioner's Reply, Doc. 18.* Upon review of the record, however, this Court is not persuaded that Petitioner has met his burden of rebutting the presumption of correctness of the factual findings of the state appellate court. *See* 28 U.S.C. § 2254(e). The Court also notes that, later in its decision, the appellate court refers to additional facts, including Petitioner's intoxicated state.

April 15, 2010, decision denying his appeal and request for enlargement of time to file his request. *Exhibit 24 to Return of Writ*. On June 29, 2010, the appellate court denied his application for reconsideration and request for enlargement of time. *Exhibit 27 to Return of Writ*. Petitioner filed a motion to certify conflict. *Exhibit 28 to Return of Writ*. On August 19, 2010, the appellate court denied Petitioner's motion. *Exhibit 29 to Return of Writ*. Petitioner did not timely appeal. On October 27, 2010, the Ohio Supreme Court denied his motion for delayed appeal. *Exhibit 40 to Return of Writ*.

On July 13, 2010, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner asserted that he had been denied the effective assistance of counsel because his attorney failed to raise the following assignments of error on direct appeal:

> 1. Prosecutorial misconduct deprived the Appellant of due process, equal protection of the laws and a fair trial.
>
> 2. Appellant was deprived of equal protection of the laws and a fair trial where evidence presented supported affirmative defenses.
>
> 3. The trial court's abuses of discretion denied Appellant of due process, equal protection of the laws and a fair trial.
>
> 4. Plain errors and structural errors deprived the Appellant of his constitutional rights to due process, equal protection of the laws and a fair trial.

*Exhibit 30 to Return of Writ*. On October 14, 2010, the appellate court denied Petitioner's Rule 26(B) application. *Exhibit 31 to Return of Writ*. On February 2, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 43 to Return of Writ*.

On August 22, 2011, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of Respondent in violation of the Constitution of the United States based upon the following grounds:

1.      The trial court prejudiced Petitioner when denying him the Sixth Amendment to the U.S. Constitution right to a speedy trial.

2.      Petitioner was prejudiced and denied equal protection of the laws when not afforded a speedy trial in violation of the Sixth, Ninth & Fourteenth Amendments to the U.S. Constitution.

3.      The trial court fraudulently misrepresented a material fact to intentionally deny Petitioner of the right to a speedy trial as established by the Sixth Amendment to the U.S. Constitution.

4.      The trial court denied Petitioner the Ninth & Fourteenth Amendments to the U.S. Constitution right to equal protection of the laws when permitting deficient defense counsel, by fraudulent misrepresentation of material facts, to waive his speedy trial right without his knowledge, outrageous government conduct.

5.      Petitioner was denied his *Batson* protections to a fair and impartial jury of his peers and due process when ineffective defense counsel waived the preservation of voir dire on the record, in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

6.      Petitioner was prejudiced and denied the Ninth and Fourteenth Amendment to the U.S. Constitution right to equal protection of the laws when the trial court permitted use of a motion for continuance form that fraudulently waived Petitioner's Sixth Amendment to the U.S. Constitution speedy trial right automatically, without consent.

7.      Prosecutorial misconduct denied Petitioner a fair and speedy trial, effective assistance of defense counsel, due process and equal protection of the laws, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution, through the intentional delay in providing discovery material as required by rule, demonstrating outrageous government conduct.

8. The trial court demonstrated bias and prejudice by refusing to rule upon Petitioner's pre-trial motion to dismiss for violation of the speedy trial provision as afforded by the Sixth and Fourteenth Amendments to the U.S. Constitution, the non-performance demonstrating outrageous government conduct.

9. Petitioner was denied effective assistance of counsel, a fair trial, due process and equal protection of the laws from defense counsel's failure to perform the constitutionally impose[d] duty to conduct pre-trial investigations and preparations necessary to the compulsory process, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

10. Excessive bail deprived Petitioner the guarantee of a fair trial, equal protection of the laws, due process and effective assistance of counsel, in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

11. The trial court abused its discretion and prejudiced Petitioner by requiring Petitioner to attend trial in shackles, denying him the due process and effective assistance of counsel guarantees provided in the fifth, Sixth, and Fou8rteenth Amendments to the U.S. Constitution.

12. Prosecutorial misconduct deprived Petitioner of a fair trial, effective assistance of defense counsel, the Confrontation Clause protections, due process and equal protection of the laws by the fraudulent concealment and nondisclosure of exculpatory material evidence, violating the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

13. Petitioner was prejudiced and denied a fair trial, due process and equal protection of the laws from deficient defense counsel's failure to preserve the Confrontation Clause protections by permitting the prosecutor to waive his Criminal Rule 16 protections, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

14.     Petitioner was biased and prejudiced by the trial court's failure to present an impartial tribunal and assure his confrontation clause right by allowing the prosecution to waive Petitioner's Crim.R. 16 protections, depriving him of a fair trial, due process and equal protection of the laws, violating the fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution, a demonstration of outrageous government conduct.

15.     Petitioner was denied a fair trial, due process and equal protection of the laws due to the trial court's failure to request in camera inspection of detective and prosecution witnesses' testimony and statements, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

16.     Petitioner was denied the opportunity to present an adequate defense due to deficient defense counsel's failure to provide an expert witness, depriving Petitioner of the compulsory process and a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

17.     Defense counsel's performance was deficient and below professional norms and standards due to the fraudulent non-disclosure of, and inadequate argument to, the Crim.R. 29 motion for acquittal raised following the prosecution's case presentation, depriving Petitioner of effective assistance of counsel and equal protection of the laws, violating the Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

18.     Petitioner was denied a fair trial before an impartial tribunal and jury, due process and equal protection of the laws due to the prosecution's knowing use of perjured testimony, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

19.     Petitioner was biasedly [sic] and prejudicially denied a fair trial before an impartial tribunal and jury, due process and equal protection of the laws by the trial

court's presentation of a jury verdict form that contained a fraudulent misrepresentation of the law respective to the 'inferior degree of offense' to be considered, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

20. Petitioner was prejudiced and denied equal protection of the laws, due process and a fair trial by the trial court's failure to properly respond to the deliberating juries' question regarding 'mitigating circumstances' relative to the evidence presented, in conflict with the rights afforded by the fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution, demonstrating outrageous government conduct.

21. The trial court fraudulently misrepresented the method of deliberations and proper application of the law to the facts to the jury, biasedly [sic] and prejudicially eliminating Petitioner's affirmative defenses and depriving him of a fair trial before an impartial tribunal and jury, due process and equal protection of the laws, as afforded by the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution, creating a manifest miscarriage of justice and presenting outrageous government conduct.

22. Petitioner was biased and prejudiced by the trial court's refusal to provide the deliberating jury the requested clarification of the applicable law, denying him due process, equal protection of the laws and the right to a fair trial before an impartial tribunal and jury, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution, a clear demonstration of outrageous government conduct.

23. Petitioner was provided deficient and incomplete defense counsel based upon counsel's failure to object to the jury verdict form that fraudulently misrepresented the manner of determining guilt or innocence of the aggravated assault, denying Petitioner equal protection of the laws, due process and a fair trial, as afforded by the Fifth, Sixth, Ninth

and fourteenth Amendments to the U.S. Constitution.

24. Plain error and outrageous government conduct was committed by the trial court's failures to properly instruct the jury in a manner to clarify the applicable law and the intentional elimination of the affirmative defenses presented in Petitioner's criminal matter, by instructing a prejudicial and illegal method of deliberations, violating the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

25. Petitioner was prejudiced and denied the rights to a fair trial by an impartial jury, due process, equal protection of the laws and freedom from cruel and unusual punishment when the jury clearly lost its way and failed to adhere to the reasonable doubt doctrine before presenting a finding of guilt without properly understanding the applicable laws, creating a manifest miscarriage of justice, in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

26. Structural errors permeated the entire trial process, establishing the resulting trial procedure as unreliable to serve its function as a guilt or innocence determining vehicle, demonstrating extreme bias, prejudice and fundamental deprivations towards Petitioner, violating the protections set forth in the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

27. Prosecutor's outrageous conduct prejudicial to Petitioner was committed in the misrepresentation of material facts and expressions of personal beliefs and opinions during the presentation of closing arguments to the jury, denying Petitioner of a fair trial before an impartial jury, due process and equal protection of the laws in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

28. Petitioner was denied a fair trial before an impartial jury and equal protection of the laws due to the jury's use of insufficient evidence in the finding of guilt to felonious assault beyond a reasonable doubt,

prejudicially exposing Petitioner to cruel and unusual punishment in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, creating a manifest injustice.

29.  Petitioner was prejudiced and denied a fair trial before an impartial jury, due process and equal protection of the laws by defense counsel's deficient performance when failing to object to the improper, unclarifying and misleading supplemental jury instructions given by the biased trial court, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

30.  The cumulative effect of the numerous trial errors presented contributed to the illegal conviction and sentencing of Petitioner, are not harmless beyond a reasonable doubt, and deprived Petitioner of fair trial before an impartial tribunal and jury, effective assistance of defense counsel, due process and equal protection of the laws rights as afforded by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

31.  The manifest weight of the evidence presented was improperly applied by the trial jury and not impartially reviewed by the appellate court respective to the consideration of the facts relative to the law, when determining self-defense and serious provocation and is non-supportive of the guilty verdict rendered, prejudicing Petitioner and denying him a fair trial, due process and equal protection of the laws in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

32.  The trial court abused its discretion, committed plain error and demonstrated outrageous government conduct when imposing an excessive sentence upon Petitioner by expressing its personal, unsolicited comments at the sentencing hearing, establishing a predetermined opinion after prosecution witness' testimony, allowing the presentation of injury information of an acquitted count by prosecution, failure to consider the required statutory sentencing

analysis, and imposing statutory financial sanctions in its sentencing entry outside of Petitioner's presence in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.

33. Petitioner was denied his First Amendment to the U.S. Constitution right of freedom to access the court by the appellate court's fraudulent misrepresentation of a material fact when misconstruing supporting documents to the Evid.R. 201 Motion, to effectively deprive Petitioner the constitutionally afforded direct appeal review opportunity of meritable issues that were prejudicial to Petitioner at the trial court level, in violation of the Ninth and Fourteenth Amendments to the U.S. Constitution's equal protection of the laws clauses.

34. Petitioner was prejudiced and deprived of the equal protection of the laws right provided in the Ninth and Fourteenth Amendments to the U.S. Constitution by the appellate court's fraudulent concealment of material facts when conducting its biased direct appeal review, demonstrating the knowledge of a predetermined outcome, in violation of the Fifth, Sixth and Eighth Amendments to the U.S. Constitution.

35. Petitioner was prejudiced by the trial court's failure to correct the deficient and incomplete trial transcript prepared and transmitted to appellate court, depriving Petitioner of a fair and meaningful direct appeal review in violation of the Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

36. Petitioner was prejudiced by the court of appeals' fraudulent nondisclosure of material facts by denying the request for correction and modification of the incomplete trial transcript transmitted for direct appeal review, denying Petitioner effective assistance of appellate counsel and equal protection of the laws as afforded by the Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

37. Petitioner was denied the Sixth Amendment to the

U.S. Constitution guarantee of effective assistance of appellate counsel as a result of counsel's incomplete and inaccurate arguments to the weakest issues raised for review by the appellate court, depriving Petitioner of a fair and meaningful direct appeal review, in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

38.     Petitioner was deprived of the Sixth Amendment to the U.S. Constitution right to effective assistance of appellate counsel and prejudiced due to counsel's failure to raise the claim of the prosecutor's knowing use of perjured testimony, denying Petitioner the freedom to access the court for a redress of grievances, due process and equal protection of the laws, in violation of the First, Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution.

39.     Petitioner was prejudiced by the deficient performance and representation of court appointed appellate counsel's failure to present as error the trial court's insufficient, misleading and unresponsive supplemental instructions to the deliberating jury upon request, which denied Petitioner the right of a fair, full and meaningful direct appeal review, regarding the denial of Petitioner's right to a fair and impartial jury trial, effective assistance of counsel, due process and equal protection of the laws as provided by the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

40.     Petitioner was denied the Sixth Amendment to the U.S. Constitution guarantee of effective assistance of appellate counsel due to the failure of counsel to present the argument of erroneous jury verdict forms that improperly and prejudicially defined the law and manner of deliberations regarding aggravated assault, depriving Petitioner o0f a fair and impartial jury trial, due process and equal protection of the laws, as afforded by the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

41.     Deficient and prejudicial performance of appellate counsel deprived Petitioner of the right to a full and

meaningful direct appeal review when failing to present and demonstrate the arguments of plain errors and structural errors that denied Petitioner the rights to a fair trial, effective assistance of counsel, due process and equal protection of the laws, set forth in the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

42. Petitioner was prejudiced and denied of [sic] a fair and meaningful direct appeal review by deficient appellate counsel's failure to demonstrate the injury caused by the trial court's requirement that Petitioner attend trial in shackles, denying Petitioner the guarantees of a fair and impartial jury trial, effective assistance of counsel, due process and equal protection of the laws found in the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

43. Petitioner was deprived of the Sixth Amendment to the U.S. Constitution guarantee of effective assistance of appellate counsel due to the failure of counsel to raise and demonstrate the claim that the trial jury failed to legally and properly determine guilt beyond a reasonable doubt, depriving Petitioner of a fair trial, due process and equal protection of the laws in violation of the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

44. Petitioner was prejudiced and denied due process and equal protection of the laws due to the grand jury being misled by prosecutor's fraudulent concealment and misrepresentation of material facts in violation of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution.

45. Petitioner was deprived of the due process and equal protection of the laws guarantees by the grand jury's failure to fully and impartially conduct its sworn duty to investigate the allegations prior to delivering an indictment, in violation of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution.

46. Petitioner was prejudiced and deprived of the equal

13

protection of the laws guarantees in the Ninth and Fourteenth Amendments to the U.S. Constitution by the appellate court's fraudulent concealment and misrepresentation of material facts when failing to impartially and meaningfully review Petitioner's claim of the prosecutor's knowing use of perjured testimony, subjecting upon Petitioner cruel and unusual punishment and a denial of due process in violation of the Fifth and Eighth Amendments to the U.S. Constitution.

47. Petitioner was deprived the rights to due process and equal protection of the laws provided by the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution by the vindictive and racially motivated prosecution of Petitioner.

48. Petitioner was prejudiced and deprived of the equal protection of the laws guarantees by the prosecutor's fraudulent misrepresentation of material facts in its opposition to Petitioner's knowing use of perjured testimony claim, in violation of the Ninth and Fourteenth Amendments to the U.S. Constitution.

49. Petitioner was prejudiced and deprived the equal protection of the laws guarantees in the Ninth and Fourteenth Amendments to the U.S. Constitution by the prosecutor's fraudulent misrepresentation of material facts in its opposition to the prejudicial injury Petitioner suffered by the illegal withholding and untimely disclosure of discovery, in violation of the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.

50. Petitioner was prejudiced and deprived the equal protection of the laws guarantees of the Ninth and Fourteenth Amendments to the U.S. Constitution by the prosecutor's fraudulent concealment and misrepresentation of material facts when opposing Petitioner's claim that the evidence presented supported the affirmative defenses of self-defense and serious provocation.

51. Petitioner was denied a fair, impartial and meaningful

review of the claims of ineffective assistance of appellate counsel by the appellate court's failure to adhere to the invoked doctrine of stare decisis, depriving Petitioner o0f the rights to due process and equal protection of the laws afforded by the Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

52. Petitioner was deprived the due process and equal protection of the laws guarantees of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution by the appellate court's fraudulent misrepresentation of material facts and prejudicial implementation of immaterial facts when reviewing Petitioner's claim that the evidence presented supported the affirmative defenses provided in the unfair trial proceedings resulting in an illegal guilty verdict.

53. Petitioner was prejudiced and deprived the due process and equal protection of the laws guarantees of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution by the appellate court's fraudulent misrepresentation of material facts when reviewing Petitioner's claim respective to the prejudice shown by the required attendance at trial in shackles, to sustain a conviction resulting from an unfair trial in violation of the Sixth Amendment to the U.S. Constitution.

54. Petitioner was prejudiced and deprived the due process and equal protection of the laws guarantees of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution by the appellate court's fraudulent concealment and misrepresentation of material facts when overruling Petitioner's claim that the jury was presented an erroneous verdict forms for consideration of aggravated assault.

55. Petitioner was prejudiced and deprived the due process and equal protection of the laws guarantees of the Fifth, Ninth and Fourteenth Amendments to the U.S. Constitution when the appellate court failed to conduct a full review of Petitioner's claim that the supplemental instructions provided to the deliberating

jury were incorrect statements of law.

56.     Petitioner was deprived of the freedom to redress of grievances, the rights to a fair and meaningful direct appeal review, effective assistance of appellate counsel, due process and equal protection of the laws found in the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, from the appellate court's abuse of discretion, bias and prejudice when acting in complicity with the state and trial court by affirming a conviction and sentence that is contrary to law.

57.     Petitioner was prejudiced and denied a fair and meaningful direct appeal of right review due to the cumulative deficiencies of court appointed appellate counsel when failing to raise numerous stronger, meritable errors, depriving Petitioner the rights to access the court, due process and equal protection of the laws provided by the First, Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

58.     Petitioner was prejudiced and deprived of the freedom to access the courts and from cruel and unusual punishment, due process and equal protection of the laws by the Ohio Supreme Court's fraudulent misrepresentation of material facts when refusing to [ac]cept jurisdiction of Petitioner's discretionary appeal presenting substantial constitutional questions of great public interests, in violation of the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, demonstrating outrageous government conduct, bias, prejudice and an abuse of discretion, incomplicity and conspiracy to enforce a conviction and sentence that is contrary to law.

59.     Petitioner was deprived access to the court, effective assistance of counsel, due process, equal protection of the laws, a fair and meaningful direct appeal review and exposed to cruel and unusual punishment by the Ohio Supreme Court's abuse of discretion, bias and prejudice when failing to accept jurisdiction of Petitioner's claimed appeal of right, in violation of the First, Fifth, Sixth, Eighth, Ninth and Fourteenth

Amendments to the U.S. Constitution, creating a manifest injustice.

60.  Petitioner was prejudiced and deprived of the freedom from cruel and unusual punishment and access to the courts, the rights to a fair trial before an impartial jury and tribunal, indictment by impartial grand jury, effective assistance of trial counsel, effective assistance of appellate counsel, due process, equal protection of the laws and a fair, impartial and meaningful review of legal and procedural errors committed during the State of Ohio's complicit, discriminatory, vindictive and racially motivated prosecution, trial, conviction and sentencing of Petitioner, in violation of the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, demonstrating outrageous government conduct and creating a manifest injustice.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## MOTION TO EXPAND THE RECORD

Petitioner filed a *Motion to Expand the Record* pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts. Doc. No. 17. Rule 7 provides as follows:

Expanding the Record

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

© Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Petitioner asks that the record be expanded to include: 1) visitor's log from the Franklin County Correction Center indicating the dates and times that individuals visited Petitioner at the jail between March 5, 2008, and March 6, 2009; 2) a Columbus Police Department criminal investigation summary provided to defense counsel 1 ½ weeks prior to trial and purportedly used to obtain the indictment against Petitioner; 3) the docket sheet from Petitioner's criminal case. Petitioner has attached these documents to his *Motion to Expand the Record.*  Petitioner contends that the visitor's log supports habeas corpus claims one, four, six and nine, in which Petitioner challenges his trial counsel's performance;  Petitioner appears to offer the visitor's log to support his allegation that defense counsel failed to visit him during the time period at issue.  Petitioner contends that the Columbus Police Department report supports habeas corpus claims  forty-five, forty-seven, and fifty-eight, in which Petitioner challenges the foundations of the prosecution; according to Petitioner, prosecution witnesses testified that their statements, as summarized in the police report, are the actual statements made by them to police.   As noted *supra,* Petitioner also asks that the state court docket be made part of the record before this Court;  Respondent does not oppose expansion of the record to include the criminal docket.  *See Response in Opposition,* Doc. No.19.   As it relates to that request, therefore, Petitioner's motion to expand the record is **GRANTED**.

Respondent opposes Petitioner's motion as it relates to the visitor's log and the  police report. Respondent specifically argues that Petitioner has failed to explain how the requested documents will assist him in establishing the merits of the claims identified by him and that, in any event, those

claims have been procedurally defaulted.

Federal law limits the circumstances under which a federal habeas court may receive evidence not presented to the state courts and may properly conduct an evidentiary hearing. *See* 28 U.S.C. § 2254(d), (e). Review of a claim adjudicated by the state courts on the merits is "backward-looking," requiring examination of the state court decision at the time it was made in view of the record then before it. *Cullen v. Pinholster*, ⸺ U.S. ⸺, 131 S.Ct. 1388, 1398 (2011)(federal habeas review is limited to the record before the state court that adjudicated the claim on the merits). Federal habeas courts do not function as an alternative forum for trying those facts and issues that a prisoner should have pursued in state proceedings. *Id.*

> [R]eview under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of "the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor,* 529 U.S. 362, 405, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). If the state-court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413, 120 S.Ct. 1495. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

*Id.* at 1399 (footnote omitted).

> Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.,* at 437, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435; *see also Richter,* 562

> U.S., at ——, 131 S.Ct., at 787 ("Section 2254(d) is part of the basic
> structure of federal habeas jurisdiction, designed to confirm that state
> courts are the principal forum for asserting constitutional challenges
> to state convictions"); *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct.
> 2497, 53 L.Ed.2d 594 (1977) ("[T]he state trial on the merits [should
> be] the 'main event,' so to speak, rather than a 'tryout on the road' for
> what will later be the determinative federal habeas hearing").

*Id.*

Here, Petitioner never properly presented to the state courts his allegations in habeas corpus claims one, four and six, which relate to speedy trial claims, or in habeas corpus claim nine, which complains that his attorney failed to conduct discovery, investigate or present witnesses. Likewise, Petitioner failed to present to the state courts his allegations in habeas corpus claims forty-five and forty-seven, which relate to the grand jury's return of the indictment and to the allegedly vindictive nature of the prosecution. His allegation in claim fifty-eight, in which he contends that the Ohio Supreme Court unconstitutionally refused to accept his appeal, fails to present an issue of a federal constitutional law. Thus, neither the visitor log or the police summary report offered by Petitioner will assist him in establishing whether habeas corpus relief is warranted on these claims. Moreover, Petitioner has failed to justify, under 28 U.S.C. § 2254(e), the expansion of the record in connection with claims that were neither presented to nor adjudicated by the state courts.

As it relates to the visitor log and the police summary report, Petitioner's motion to expand the record is therefore **DENIED**.

## PROCEDURAL DEFAULT

Respondent contends that most of Petitioner's claims have been procedurally defaulted. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal

defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), ©. If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his claims on the merits if he establishes: (1)

a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.* 'Cause' under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1892)). A petitioner who fails to show cause and prejudice for procedural default may nonetheless receive a review of his claims if he can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle*, 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Claims one, two, three, six and eight all relate to Petitioner's allegation that he was denied his right to a speedy trial. In claim seven, Petitioner asserts that he was denied a fair trial and the effective assistance of counsel because the prosecutor failed to provide timely discovery. In claim ten, Petitioner asserts that he was unconstitutionally denied reasonable bail. In claim eleven, Petitioner asserts that he was denied a fair trial because the trial court required him to wear shackles during trial. In claim fourteen, Petitioner asserts that he was denied a fair trial and was convicted in violation of the Confrontation Clause because the trial court failed to comply with Ohio Criminal

Rule 16.  In claim fifteen, Petitioner asserts that he was denied a fair trial and equal protection because the trial court failed to conduct an *in camera* inspection of statements of Detective Rousch and prosecution witnesses in regard to alleged differences between police report summaries and witness statements to police.[2]  In claim eighteen, Petitioner asserts that the prosecutor knowingly presented perjured testimony by Angela Theado.  In claim nineteen, Petitioner asserts that he was convicted by the use of a defective verdict form that improperly required the jury to find him not guilty of felonious assault before it could find him guilty of aggravated assault.  In claim twenty, Petitioner asserts that he was denied a fair trial because the trial court improperly responded to the jury's question regarding mitigating circumstances.  In claim twenty-one, Petitioner asserts that the trial court misrepresented the law and improperly responded to the jury's second question during deliberations.  In claim twenty-two, Petitioner asserts that he was denied a fair trial because the trial court refused to clarify, in response to a question from the jury, the definition of "affray."  *Petition*, PageID#144.  In claim twenty-three, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to object to a defective indictment. In claim twenty-four, Petitioner asserts that he was denied a fair trial because the trial court advised the jury, in supplemental instructions, to disregard Petitioner's testimony and his defenses of serious provocation and self defense.  In claim twenty-five, Petitioner asserts that he was denied a fair trial because the jury "rendered a verdict that is contrary to law," clearly lost its way and failed to adhere to the "reasonable doubt doctrine."  *Petition*, PageID#147.  In claim twenty-six, Petitioner asserts that structural errors deprived him of a fair trial.  In claim twenty-seven, Petitioner asserts that he was denied a fair trial based on outrageous and improper conduct by the prosecutor during closing

---

[2]  Petitioner alleges that Detective Rousch removed witness statements indicating that the victims were the aggressors.

argument. In claim twenty-nine, Petitioner asserts that he was denied a fair trial because his attorney failed to object to "improper, unclarifying and misleading supplemental jury instructions given by the biased trial court." *Petition*, PageID#149. In claim thirty-two, Petitioner asserts that the trial court improperly imposed an excessive sentence.[3]

All of these claims are readily apparent from the face of the record, and should have been raised on direct appeal, but were not.[4] Moreover, Petitioner may now no longer present these claims to the state courts under Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967). Furthermore, the state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

_____

[3] Respondent correctly notes that, to the extent Petitioner raises an issue regarding the alleged violation of state law, such claim fails to present a claim appropriate for federal habeas corpus relief. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984)(a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law.").

[4] Petitioner did raise on appeal a claim regarding an allegedly defective indictment; however, the claim actually raised on appeal differed from that presented in claim nineteen. The state appellate court summarized his claim as follows:

> Hill argues that his guilty verdict was void because it violated R.C. 2945.75(A)(2), which states that, when an additional element enhances the degree of an offense, the "guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present." Where the guilty verdict does not state the degree of the offense or that an additional element is present, the verdict constitutes a finding of guilt to the least degree of the offense charged. Hill maintains that his verdict is defective because it did not include the degree of the offense of which he was found guilty or state that degree-enhancing elements were found. Hill, thus, argues that he could only be convicted of aggravated assault, a felony of the fourth degree. Hill's argument is unpersuasive.

*State v. Hill*, 2010 WL 1510199, at *10.

To the extent that any of these claims, or claim forty-seven (in which Petitioner asserts that the prosecution was vindictive and racially motivated), may rely on evidence not made a part of the record, such claims should have been raised in a petition for post conviction relief under O.R.C. § 2953.21. Petitioner did not pursue a petition for post conviction relief and it does not appear that Petitioner could now satisfy the requirements for filing a delayed post conviction proceeding. *See* O.R.C. § 2953.23. Thus, the Court deems the first and second parts of the *Maupin* test to have been met.

Petitioner did raise claim seven, alleging untimely discovery by the prosecution, for the first time in his appeal to the Ohio Supreme Court. However, the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *Evans v. Mitchell*, 344 Fed. Appx. 234, 244 (6th Cir. August 28, 2009)(citing *Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982); *State v. Phillips,* 27 Ohio St.2d 294, 302, 272 N.E.2d 347 (1971)). Therefore, Petitioner did not preserve this claim for review by this Court.

Petitioner also briefly referred to habeas corpus claim ten, which alleges the imposition of excessive bail, in his supplemental appellate brief and in his brief to the Ohio Supreme Court. Those untimely references did not preserve this claim for federal habeas corpus review. In any event, conviction renders moot any constitutional claims regarding bail. *United States v. Manthey,* 92 Fed. Appx. 291, 297 (6th Cir.2004) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

Likewise, Petitioner's reference to many of his claims, in his motion for "judicial notice" or in his supplemental *pro se* brief to the Ohio Court of Appeals, did not preserve those claims for review. There is no constitutional right to make *pro se* filings while at the same time proceed with the assistance of counsel. *McKaskle v. Wiggins*, 465 U.S. 168 (1984). Moreover, the state appellate

court explicitly declined to consider any claims not raised by Petitioner's appellate attorney:

> [W]e briefly address a pro se judicial notice of various documents attached to the motion. Those documents include a new, pro se appellate brief and other documents, including letters addressed from Hill to his attorney and to the Director of the Correctional Institution Inspection Committee. First, the attachments to Hill's motion do not qualify for judicial notice under Evid.R. 201(B), which permits judicial notice only of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Moreover, while a criminal defendant has a right to act pro se or to have counsel, he has no right to "hybrid representation," and, where appointed counsel files a merit brief on behalf of a defendant-appellant, the appellant is not entitled to file an additional brief pro se. See *State v. Saaty* (Mar. 4, 1997), 10th Dist. No. 96APA06-777, citing *State v. Thompson* (1987), 33 Ohio St.3d 1, 6-7, 514 N.E.2d 407. Finally, because an appellate court's review is limited to the certified record, the court cannot add matter that was not part of the trial court proceedings, and then decide the appeal based on the new matter. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 377 N.E.2d 500, paragraph one of the syllabus. Accordingly, we may not consider the submitted documents that were not part of the certified record from the trial court. For these reasons, we deny Hill's motion and proceed to our discussion of his assignments of error.

*State v. Hill*, 2010 WL 1510199, at *2.[5]

In claims thirty-three and thirty-four, Petitioner asserts that he was denied access to the courts because the appellate court refused to consider claims raised by Petitioner in his *pro se Motion to Take Judicial Notice*. In claims thirty-five and thirty-six, Petitioner asserts that he was denied a meaningful appeal because the trial court refused to correct a deficient and incomplete trial transcript and the appellate court refused to consider his motion for correction of the record.

---

[5] Petitioner did raise on direct appeal a claim regarding allegedly defective jury instructions. However, that claim differed from the claim presented in habeas corpus claim nineteen. Petitioner argued on direct appeal that his guilty verdict was void because it violated R.C. § 2945.75(A)(2) in that it failed to specify the degree of the offense charged or degree-enhancing elements. *See State v. Hill*, 2010 WL 1510199, at *10.

Petitioner failed, however, to raise these issues on appeal to the Ohio Supreme Court and Ohio's doctrine of *res judicata* now prohibits him from doing so now. Petitioner has therefore waived these claims for review in these proceedings.

In claim four, Petitioner asserts that he was denied the effective assistance of counsel because his attorney waived his right to a speedy trial without Petitioner's consent. In claim seventeen, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to properly pursue a motion for judgment of acquittal. Petitioner raised these claims on direct appeal; however, he failed to present the claims to the Ohio Supreme Court. Petitioner cannot pursue these claims in this Court.

In claim thirty-nine, Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal the trial court's response to three questions from the jury.[6] In claim forty, Petitioner complains that his appellate counsel failed to raise a claim

_____

[6] Petitioner generally argued, in Rule 26(B) proceedings, that he was denied effective assistance of counsel because his attorney failed to raise an issue regarding erroneous and prejudicial jury instructions. *See Exhibit 30 to Return of Writ.* The state appellate court rejected this claim:

> [T]his court finds that the trial court did properly address the jury regarding felonious assault and aggravated assault. Specifically, the court charged the jury as follows:
>
> > If you find that the State proved beyond a reasonable doubt that the Defendant knowingly caused serious physical harm to Michael Newman and/or caused or attempted to cause physical harm to Michael Newman by means of a deadly weapon, and you find that the Defendant proved the mitigating circumstance by a preponderance of the evidence, then you must find the Defendant guilty of aggravated assault.
> >
> > If you find that the State failed to prove that the Defendant knowingly caused serious physical harm to Michael Newman and/or caused or attempted to cause physical harm to Michael Newman by means of

of defective verdict forms.  In claim forty-one, Petitioner complains that his appellate counsel failed to raise a claim regarding structural error.  In claim forty-three, Petitioner challenges his appellate counsel's failure to raise on appeal a claim that the jury failed to determine his guilt beyond a reasonable doubt.  Petitioner failed to raise these claims in Rule 26(B) proceedings.  *See Exhibit 30 to Return of Writ*.  He may now no longer do so by virtue of Ohio's doctrine of *res judicata*.  Petitioner has therefore waived his right to review of these claims by this Court.

In claim nine, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to conduct adequate pre-trial preparation, including discovery, investigation of the case and location of defense witnesses.  In claim twelve, Petitioner asserts that he was convicted in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and of the Confrontation Clause and was denied the effective assistance of counsel, all in connection with a video of Petitioner made following his arrest.  To the extent that these claims rely on matters that are readily apparent from the face of the record, Petitioner failed to present the claims to the Ohio Court of Appeals.  As noted *supra*, the fact that Petitioner may have presented claims nine and twelve to the Ohio Supreme Court in the first instance will not serve to avoid the procedural default of those claims.  To the extent that these claims rely on matters that are not readily apparent from the face

---

a deadly weapon, you must find the Defendant not guilty of felonious assault and not guilty of aggravated assault.

This same jury instruction was given regarding the counts involving both Michael and Kyle. . . . [T]he jury found appellant not guilty of felonious or aggravated assault with regard to Kyle.  To the extent that appellant argues that the jury's questions indicate that they did not understand the charge, the fact that appellate was found not guilty of the count involving Kyle indicates otherwise.  Appellant has not demonstrated that appellate counsel was deficient for not raising this argument.

*Exhibit 31 to Return of Writ.*

of the record, they should have been raised in a petition for post conviction relief under O.R.C. § 2953.21. Petitioner did not pursue such action, and the time for doing so has long since expired. Because it does not appear that Petitioner can meet the strict requirements for consideration of an untimely post conviction petition, *see* O.R.C. § 2953.23,[7] Petitioner has waived this Court's consideration of those claims.

Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732–33 (1991). To be

---

[7] O.R.C. § 2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

(1) Either of the following applies:

(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

"adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In sum, this Court concludes that Petitioner has waived this Court's consideration of habeas corpus claims one through four, six through twelve, fourteen, fifteen, seventeen through twenty-seven, twenty-nine, thirty-two through thirty-six, thirty-nine through forty-one, forty-three and forty-seven for federal habeas corpus review.

30

**CAUSE**

Petitioner may still obtain review of the merits of these claims if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default so long as the claim of ineffective assistance of counsel has itself been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).

As cause for the procedural default of claims eleven and eighteen, the Court presumes that Petitioner intends to rely on a claim of ineffective assistance of appellate counsel, as raised in habeas corpus claims thirty-eight and forty-two. The state appellate court rejected these claims in relevant part as follows:

> Appellant claims. . . that appellate counsel should have raised the issue of prosecutorial misconduct. Appellant claims that the prosecutor knowingly presented perjured testimony from Angela Theado. Without providing any specifics, appellant claims that Angela's testimony at this trial was inconsistent with the statements she made to the police. Further, appellant argues that Angela's testimony was a "verbatim recollection" of the testimony presented by her boyfriend, Michael Newman.
>
> ***
>
> Both Michael and Angela testified that, when appellant exited the bar, Angela essentially told appellant to leave Emily alone. (Tr. 42,

31

123.)  Thereafter, both Michael and Angela testified that Michael tried to diffuse [sic] any hostilities that existed between appellant and the others.  (Tr. 43, 124.)  Michael testified further that he was struck in the face by appellant and that the two began struggling.  (Tr. 43-44.)  By comparison, Angela testified that she did not realize that Michael had been hit.  She saw Michael grab appellant's wrists and that is when Angela testified that she saw the box cutter.  (Tr. 124-25.)  Thereafter, Angela entered the bar to ask for help.  When she exited, appellant was on the ground, and Michael was on top of him.

While there are obvious similarities between Michael's and Angela's testimony, it is not a verbatim account.  Further, Angela never even saw appellant strike Michael.

To the extent that appellant argues that Angela's statement to the police differs from her testimony, those statements are not part of the record.  In our earlier decision in this case, this court noted that materials outside the trial court record cannot appropriately be considered by this court on direct appeal. . . . The record does not support appellant's contention that the prosecutor knowingly used perjured testimony.  As such, appellate counsel was not deficient for failing to raise this assignment of error.

***

[A]ppellant argues that he suffered prejudice when he was forced to attend the trial in shackles and had to testify outside the presence of the jury.  Appellant argues that this caused the jury to perceive him as a violent man. . . .

At pages 13 and 14 of the transcript, defense counsel noted that counsel's table had been closed off so that the leg shackles were not visible, but asked that appellant's handcuffs be removed.  The court agreed.  Therefore, there was no prejudice in this regard.  Further, appellant's argument that he testified outside the presence of the jury is not supported by the record.  Instead, at page 402, because appellant was wearing leg shackles, the court had appellant take the witness stand out of the presence of the jurors so that his leg shackles would not be visible.  Nothing in the record supports appellant's contention that the jury was not able to see him as he testified.  Appellant has not presented any genuine issue of appellate effectiveness in these regards.

*Exhibit 31 to Return of Writ.*

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*

> *v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481
> (1997), and "demands that state-court decisions be given the benefit
> of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357,
> 154 L.Ed.2d 279 (2002) ( per curiam ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the
> holdings, as opposed to the dicta, of this Court's" cases. *Williams v.
> Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
> An "unreasonable application" of that law involves not just an
> erroneous or incorrect decision, but an objectively unreasonable one.
> *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, – U.S. –, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent

in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To establish the second prong of the *Strickland* test, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, the court need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed in a reasonably competent manner:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999).

Petitioner claims that Angela Theada lied and the prosecutor knowingly presented her perjured testimony. In support of this claim, Petitioner alleges that her eyewitness account differs from the account she initially provided in police reports; Petitioner also alleges that Angela's testimony matched that of her boyfriend, Michael Newman, and that the prosecutor had reviewed with Angela prior to trial her prior statements. Petitioner contends that the State has waived "all defenses and denials" in connection with this claim because it failed to file a memorandum opposing this claim in the Ohio Supreme Court. *See Petitioner's Reply, Doc. 18*, PageID#1496-97.

"The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). In order to warrant relief on the basis of false testimony, the challenged statement must have been both false and material, and the prosecutor must have known that the statement was false. *United States v. Maga*, No. 10–4008, 2012 WL 1109472, at *8 (6th Cir. April 4, 2012) (citing *United States v. Farley*, 2 F.3d 645, 655 (6th Cir.1993)). It is the convicted party's burden to show that the testimony was actually false. "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false

testimony." *Lochmondy*, 890 F.2d at 822.

As discussed by the state appellate court, the record simply does not establish the prosecution's knowing presentation of false testimony. Therefore, Petitioner cannot establish that his appellate counsel performed in a constitutionally ineffective manner by failing to raise this claim on appeal.

Petitioner also alleges that he was denied a fair trial due to the use of restraints at trial. As a general rule, a trial court should not compel a criminal defendant to go to trial in prison or jail clothing, or in handcuffs and shackles that are visible to the jury, because of the possible impairment of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 504 (1976); *Deck v. Missouri*, 544 U.S. 622 (2005)(Constitution prohibits use of visible shackles unless use is justified by an essential state interest specific to the defendant on trial); *see also Ruimveld v. Birkett*, 404 F.3d 1006 (6th Cir. 2005)(shackling of defendant in view of jury at trial did not constitute harmless error).

> Exposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so "inherently prejudicial" as to deny the defendant's constitutional right to a fair trial. *United States v. Pina*, 844 F.2d 1, 8 (1st Cir.1988). We have distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse. Defendants are required to show actual prejudice where "[t]he conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial."

*United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000).

Here, however, and as noted by the state appellate court, the record does not establish that the jury viewed Petitioner in shackles. The record establishes that handcuffs were removed prior to trial. *Trial Transcript*, PageID#763-64. Petitioner apparently wore leg shackles during trial, but

counsel table was closed so that the jury could not see Petitioner's feet. Petitioner took the witness stand outside the presence of the jury, and before his testimony, so that the jury could not see the shackles on his legs. *Id*. PageId#1156. Therefore, Petitioner cannot establish that his appellate counsel performed in a constitutionally ineffective manner, or that Petitioner was prejudiced thereby, when counsel failed to raise this claim on appeal.

In short, Petitioner's claims of ineffective assistance of appellate counsel, as reflected in claims thirty-eight and forty-two, are without merit. It follows that Petitioner has also failed to establish cause and prejudice for his procedural default of claims eleven and eighteen.

Petitioner has failed to establish cause for his procedural defaults.

Beyond the four-part *Maupin* analysis, a habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). The Court concludes that this is not such a case.

**MERITS**

**Grand Jury Proceedings:**

In claim forty-four, Petitioner complains that the prosecutor mislead the grand jury and concealed or misrepresented the facts**.** In claim forty-five, Petitioner alleges that the grand jury failed to independently investigate the facts. The constitutional guarantee of indictment by a grand

jury in federal prosecutions, U.S. CONST. amend. V, does not apply to state prosecutions. *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972)(noting that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment"); *Hurtado v. California*, 110 U.S. 516, 535 (1884)(Fourteenth Amendment does not incorporate the Fifth Amendment right to a grand jury). Alleged deficiencies in grand jury proceedings do not, therefore, warrant federal habeas corpus relief. Claims forty-four and forty-five are without merit.

**Ineffective Assistance of Trial Counsel:**

In claim five, Petitioner asserts that he was denied a fair and impartial jury and the effective assistance of counsel because his attorney waived the transcription of the *voir dire*. In claim thirteen, Petitioner asserts that he was denied the effective assistance of counsel because his attorney agreed, prior to trial, that the prosecutor had provided him with discovery material in a timely manner.[8] In claim sixteen, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to present or to secure funding for a defense expert on wounds. In claim seventeen, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to present argument to support a motion for judgment of acquittal. The state appellate court rejected these claims, reasoning as follows:

> Hill contends that he received ineffective assistance of trial counsel. The United States Supreme Court has established a two-pronged test for ineffective assistance of counsel. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id.* at 687, 104 S.Ct. at 2064. In evaluating allegations of deficient

---

[8]Petitioner indicates that this is the same claim that he raised on direct appeal. *Petition, PageID#139.* This Court will therefore address that same issue here.

conduct by counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland* at 687, 104 S.Ct. at 2064. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. The Supreme Court of Ohio has adopted the two-prong *Strickland* analysis for determining whether counsel's assistance was so defective as to require reversal of a conviction. See *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

\*\*\*

Hill. . . argues that his counsel's waiver of the presence of a court reporter to record *voir dire* proceedings constituted deficient representation. Counsel does not, however, have a duty to record *voir dire* proceedings. See *State v. Barker* (May 9, 1996), 10th Dist. No. 95APA09-1209, citing *State v. Schwarzbach* (Nov. 6, 1990), 10th Dist. No. 89AP-1504 (noting the common practice in non-capital cases to waive the presence of a court reporter for voir dire), and *State v. Robertson* (July 31, 1979), 10th Dist. No. 78AP-584. As such, the waiver of a record of *voir dire* does not rise to the level of deficient performance. Even if counsel's waiver of a record of *voir dire* could be considered deficient, however, Hill does not argue any specific error in *voir dire* or any specific prejudice arising out of the lack of a record. Moreover, establishing such prejudice would require proof outside the trial court record. Because our review is confined to the trial record, that claim would not appropriately be considered on direct appeal. See *State v. Morales,* 10th Dist. No. 03AP-318, 2004-Ohio-3391, ¶ 29. Where a defendant claims ineffectiveness based on facts outside the record, the General Assembly has provided a procedure for post-conviction relief, under R.C. 2953.21, whereby a defendant may present other evidence of counsel's ineffectiveness. See *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452.

Hill's third allegation of deficient performance, that counsel waived argument in support of his Crim.R. 29(A) motion for acquittal at the conclusion of the state's case, is similarly unpersuasive. A Crim.R. 29 motion for acquittal tests the sufficiency of the evidence. *State v. Darrington,* 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15. Hill does not specify what his counsel should have argued in support of his Crim.R. 29 motion, nor does he articulate how he was prejudiced by the lack of argument. Indeed, Hill proceeded to take the stand and essentially admit to the felonious assault, subject to his claimed justification of self-defense. Especially in light of our conclusion below, that Hill's conviction was supported by the manifest weight of the evidence, Hill cannot demonstrate that he was prejudiced as a result of his counsel's strategic decision to make, but not offer additional argument in support of, a Crim.R. 29(A) motion.[FN1]

FN1. A finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency of the evidence. *State v. Sowell,* 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 89.

Hill next argues that his counsel's performance was deficient because counsel did not request, pursuant to Crim.R. 16(B)(1)(g), in camera inspections of prior statements by the state's witnesses to determine the existence of inconsistencies. Accordingly, Hill maintains that any inconsistencies were not fully explored and tested under cross-examination. Hill, however, does not identify any specific inconsistencies or explain how he was prejudiced by the supposed deficiency in his counsel's representation, where Hill's counsel cross-examined each of the state's witnesses and emphasized inconsistencies between the witnesses in arguments to the court and jury. Hill's vague claim provides no basis upon which we can evaluate his counsel's performance in that regard or address the question of resulting prejudice. See *State v. Perez,* 124 Ohio St.3d 122, 920 N.E.2d 104, 2009-Ohio-6179, ¶ 218. Thus, we conclude that Hill has not demonstrated that his counsel's performance was deficient.

\* \* \*

Hill also argues that his attorney's performance was deficient because he did not retain an expert witness to testify about the effect of Hill's pre-existing leg injury and about the extent of injury a box cutter could inflict. Hill does not explain what evidence an expert would offer or how expert evidence would have affected his self-defense

claim. Where "[n]othing in the record indicates what kind of testimony an [expert witness] could have provided," resolving the issue of whether counsel was deficient in failing to employ an expert is "purely speculative." *State v. Madrigal*, 87 Ohio St.3d 378, 390-91, 721 N.E.2d 52, 2000-Ohio-448. See also *State v. Hillman,* 10th Dist. No. 06AP-1230, 2008-Ohio-2341, ¶ 55, citing *Madrigal; State v. Hale,* 119 Ohio St.3d 118, 892 N.E.2d 864, 2008-Ohio-3426, ¶ 221 (rejecting as conjectural an ineffective assistance claim based on defense counsel's failure to request funds for an expert). Additionally, establishing what an expert would have testified to would require proof outside the record. Thus, Hill's claim of ineffective assistance based on the failure to retain and call an expert witness is not appropriately considered on direct appeal. See *Madrigal* at 391, 721 N.E.2d 52.

*State v. Hill,* 2010 WL 1510199, at *5-6.

Petitioner has failed to establish that the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief. Defense counsel's decision to waive transcription of *voir dire* proceedings appears to have been a strategic decision. Nothing in the record suggests that counsel's decision was an unreasonable one under the circumstances, or that Petitioner was prejudiced by that decision. "*Strickland,* does not require that defense counsel be perfect." *United States ex rel. Lewis v. Lane*, 656 F.Supp. 181, 190 (C.D.Ill. 1987). Moreover, as was noted by the state appellate court, any off-the-record evidence pertaining to the failure to transcribe *voir dire* (or the failure to obtain the assistance of an expert witness) is waived, because those claims should have been, but were not, raised in a petition for post conviction relief. Similarly, Petitioner cannot establish prejudice by reason of defense counsel's failure to argue in support of the motion for judgment of acquittal, in view of the state appellate court's conclusion that the prosecution had presented sufficient evidence to sustain the charges against Petitioner. Petitioner cannot establish prejudice by reason of his attorney's failure to request an *in camera* review by the trial judge of prior inconsistent statements of the witnesses, or by reason of defense counsel's failure to obtain funding

for an expert witness. Nothing in the record reflects that any expert witness would have been helpful to the defense.

Similarly, the record does not suggest that the prosecutor failed to comply with Ohio's rules governing discovery in criminal cases. Prior to trial, the following exchange took place:

> MR. LETSON: [A]bout a week and a half ago, I gave a copy of my entire felony packet to Mr. Mayer. That includes all the summaries, witness interviews, any audio recordings of any witness interviews. He's had that for about a week and a half.
>
> . . . [A] few weeks ago, he came to my office and he and I sat down. I gave him complete access to my file. I don't think there should be any 16(B)(1)(g) issues during the course of this trial.
>
> MR. MAYER: I would acknowledge that he's been more than cooperative with respect to providing information and I think we do have everything.

*Trial Transcript*, PageID762-63. Nothing in the record supports Petitioner's claim that the prosecutor violated Ohio's discovery rules or *Brady v. Maryland*, 373 U.S. at 83.

The Court likewise rejects Petitioner's claim that the trial court should have reviewed witness statements for inconsistencies. During cross-examination, defense counsel addressed any such inconsistencies between the witnesses' testimony and police report summaries. *See, e.g.*, *Trial Transcript*, PageID#903-905; 910-911;1220-22.

Claims five, thirteen, sixteen and seventeen are without merit.

**Sufficiency of the Evidence:**

In claims twenty-eight and thirty-one, Petitioner asserts that the evidence was constitutionally insufficient to sustain his conviction on felonious assault and that his conviction was against the manifest weight of the evidence. Petitioner specifically argues that the evidence against him was perjured and indicated, at most, that he had been seriously provoked into committing

43

aggravated assault. Petitioner complains that the jury ignored significant evidence of self defense. He also contends the State failed to introduce any evidence supporting his conviction. *Petition*, PageID149. According to Respondent, this claim has been waived because Petitioner argued on direct appeal only that the State had failed, in light of Petitioner's intoxicated state at the time, to introduce evidence sufficient to establish the required mental element and that the evidence failed to establish that Petitioner's box cutter was a deadly weapon. The Court concludes, however, that Petitioner adequately preserved these claims in his Rule 26(B) proceedings. *Exhibits 30, 31 to Return of Writ*. The Court will therefore address both of these claims.

To the extent that Petitioner asserts that his conviction is against the manifest weight of the evidence, Petitioner's claim fails to present an issue appropriate for federal habeas corpus relief. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without sufficient proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307  (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Id.* at 319; *Walker*, 703 F.2d at 969.

Ohio law recognizes a claim that a verdict was against the manifest weight of the evidence. That claim requires that the appellate court act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed

and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457

U.S. 31 (1982). However, because a federal habeas court does not function as an additional state

appellate court, vested with the authority to conduct such an exhaustive review, Petitioner's claim

that his conviction was against the manifest weight of the evidence cannot be considered by this

Court.

On direct appeal, the state appellate court rejected Petitioner's claim that his conviction was

against the manifest weight of the evidence in relevant part as follows:

> Hill maintains that his conviction was against the manifest weight of the evidence. . . .
>
> Defining felonious assault, R.C. 2903.11(A) states that no person shall knowingly "[c]ause serious physical harm to another" or "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Hill maintains that his conviction was against the manifest weight of the evidence in two respects. Specifically, he argues that the manifest weight of the evidence did not support a finding that he knowingly committed the offense or the use of a deadly weapon. Neither argument is persuasive.
>
> Hill first argues that the state failed to prove that he had the requisite mental state for felonious assault. To prove felonious assault, the state was required to demonstrate either that Hill knowingly caused serious physical harm or that he knowingly caused or attempted to cause physical harm by means of a deadly weapon. R.C. 2903.11(A). One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. *State v. Inman,* 9th Dist. No. 03CA0099-M, 2004-Ohio-1420.
>
> Hill's only argument regarding mental state is that his intoxication at

the time of the offense prevented him from acting knowingly, the mental state required to commit felonious assault. R.C. 2901.21©, however, states, in part, as follows:

Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. * * * Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged.

This court has held that, since the General Assembly amended R.C. 2901.21 in 2000, "voluntary intoxication may no longer be taken into account in determining the existence of a mental state that is an element of a criminal offense." *State v. Melhado,* 10th Dist. No. 02AP-458, 2003-Ohio-4763, ¶ 48. See also *Inman* at ¶ 7 (holding that a voluntary intoxication defense is not applicable to a charge of felonious assault).

Hill directs this court to the Fourth District Court of Appeals' opinion in *State v. Goad,* 4th Dist. No. 08CA25, 2009-Ohio-580, in which the court suggested that, despite the language of R.C. 2901.21©, intoxication may, in fact, preclude the existence of a knowing mental state, as required for felonious assault. We reject Hill's reliance on *Goad.* Not only has this court held that courts may no longer take voluntary intoxication into account when determining the existence of a mental state that is an element of a criminal offense, see *Melhado* at ¶ 48, but the cases upon which the Fourth District relied predate the 2000 amendments to R.C. 2901.21, which added the controlling statutory language.

Hill does not argue that his voluntary intoxication rendered him physically incapable of performing the act with which he was charged. To the contrary, he admitted the physical acts underlying his conviction, but argued that he acted in self-defense. Here, Hill argues only that his voluntary intoxication prevented him from maintaining the requisite mental state for felonious assault, the exact argument precluded by R.C. 2901.21©. Thus, Hill has not demonstrated that the jury's finding of the requisite mental state for felonious assault was against the manifest weight of the evidence.

Hill also contends that the state failed to prove that he utilized a deadly weapon. For purposes of felonious assault, "deadly weapon" has the same meaning as set forth in R.C. 2923.11, which defines a "deadly weapon" as "any instrument, device, or thing capable of

inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A); R.C. 2903.11(E)(1). A knife is not presumed to be a deadly weapon. *Columbus v. Dawson* (1986), 28 Ohio App.3d 45, 46, 501 N.E.2d 677. Rather, the prosecution must prove that the knife was designed or specially adapted for use as a weapon or, alternatively, that the defendant possessed, carried or used the knife as a weapon. *Id.*

A box cutter may constitute a deadly weapon. *State v. Carter,* 8th Dist. No. 84036, 2004-Ohio-6861, ¶ 14, quoting *State v. Tucker,* 8th Dist. No. 81885, 2003-Ohio-3022. Here, on cross-examination, Hill not only agreed that the box cutter he carried was "capable of causing death," but also agreed that, during the altercation giving rise to the indictment, he "used it as a weapon" to cut the victims. (Tr. 473.) Other witnesses also testified to Hill's use of the box cutter to cut the two victims during the altercation. Therefore, we reject Hill's argument that the state failed to prove use of a deadly weapon. Having rejected both of Hill's arguments regarding the manifest weight of the evidence, we overrule Hill's second assignment of error.

*State v. Hill,* 2010 WL 1510199, at *8-10.

In Rule 26(B) proceedings, the state appellate court concluded Petitioner had failed to establish the ineffective assistance of appellate counsel in relevant part as follows:

Appellant argues. . . that the evidence he presented clearly supported the affirmative defenses that he raised. Appellant had argued that he was provoked and that he acted in self-defense.

Appellant does not point to any evidence in the record that would support his claims. However, appellant testified that, when he exited the bar, Michael stepped in front of him and started the argument, which then became physical. Appellant testified that he was sucker-punched in the face and that he grabbed Michael's jacket solely to keep his balance. Appellant testified that he was hit again and fell to the ground, at which time he grabbed his utility knife and began swinging. (Tr. 459-62.)

In his direct appeal. . . [a]ppellant had argued that the state failed to prove that he had the requisite mental state for felonious assault, asserting that he was intoxicated at the time. Appellant also argued that the state failed to prove that he utilized a deadly weapon. This

47

court rejected appellant's arguments and concluded that his convictions were not against the manifest weight of the evidence.

Concerning appellant's current arguments, it is apparent that the jury found the testimony of the witnesses for the prosecution to be more credible than they found appellant's testimony, at least regarding the count that involved Michael. Appellant had been charged with two counts of felonious assault; one count involved Michael and the other count involved Kyle Smith. While the jury found appellant guilty of felonious assault involving Michael, the jury found appellant not guilty of felonious assault involving Kyle.

*Exhibit 31 to Return of Writ.*

Under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009), deference is due the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307, is whether, "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

In determining whether evidence is constitutionally sufficient to sustain a conviction, this Court must consider the evidence presented in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277 (1992) (citing *Jackson v. Virginia*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting

inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson*, at 326). For example, the trier of fact is entitled to disbelieve a defendant's uncorroborated testimony and to discount a defendant's credibility on account of a prior felony conviction. *Id.*

For the reasons addressed by the state appellate court, this Court likewise concludes that, when viewing all the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia*, 443 U.S. at 319, the evidence was constitutionally sufficient to sustain Petitioner's conviction on felonious assault.

Claims twenty-eight and thirty-one are without merit.

**Cumulative Error:**

In claim thirty, Petitioner asserts that he was denied a fair trial based on cumulative error. The United States Court of Appeals for the Sixth Circuit has held that such a claim will does warrant habeas corpus relief. *Scott v. Houk*, No. 4:07-CV-0753, 2011 WL 5838195, at *43 (N.D. Ohio Nov. 18, 2011)(citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)). Claim thirty is without merit.

**Ineffective Assistance of Appellate Counsel**

In claims thirty-seven and fifty-seven, Petitioner asserts that he was denied the effective assistance of appellate counsel because his appellate attorney raised weak issues on appeal in lieu of stronger, arguably meritorious, claims. Petitioner does not identify any particular issues that his attorney should have raised, but failed to raise, on appeal. Claims thirty-seven and fifty-seven, therefore, fail to provide a basis for habeas corpus relief.

In claim forty-nine, Petitioner complains that his appellate attorney failed to raise on appeal a claim regarding the withholding of discovery. To the extent that Petitioner raised this same claim in Rule 26(B) proceedings, the state appellate court rejected the claim as follows:

> [A]ppellant. . . argue[s] that the state did not comply with Crim.R. 16. However, with regard to Crim.R. 16(B), appellant's trial counsel stated as follows regarding the prosecutor: "I would acknowledge that he's been more than cooperative with respect to providing information and I think we do have everything." (Tr. 13.) The record simply does not support appellant's contention, and he has not demonstrated that appellate counsel was ineffective for failing to raise this assignment of error.

*Exhibit 31 to Return of Writ.* Again, these findings are presumed to be correct, 28 U.S.C. § 2254(e), and Petitioner has failed to meet his burden of rebutting that presumption of correctness. Nothing in the record supports his allegation that the prosecutor violated state discovery rules or that his attorney performed in a constitutionally ineffective manner in failing to raise this claim on appeal. Claim forty-nine is without merit.

**Rule 26(B) Proceedings:**

A number of Petitioner's claims attack the sufficiency of his rule 26(B) proceedings. In claim forty-six, Petitioner asserts that the state appellate court failed to meaningfully review his Rule 26(B) application in reference to his claim regarding prosecutorial misconduct based on the use of allegedly perjured testimony. Petitioner specifically complains that the appellate court "fraudulently misrepresented material facts"and that Ohio's ten page limit for the filing of his appellate brief prevented him from adequately addressing his claims. *Petition,* PageId#159. In claim forty-eight, Petitioner complains that the prosecutor, in opposing Petitioner's Rule 26(B) application, fraudulently argued that police summaries were not a part of the record. In claim fifty, Petitioner asserts that the prosecutor, in opposing Petitioner's Rule 26(B) application, concealed the

fact that the evidence supported Petitioner's affirmative defenses. In claim fifty-one, Petitioner asserts that the state appellate court refused to adhere to the principles of *stare decisis* in denying his Rule 26(B) application. In claim fifty-two, Petitioner complains that the state appellate court, in denying his Rule 26(B) application, misrepresented and ignored facts that tended to exonerate him, including Petitioner's contention that he was attacked by an angry mob. *Petition,* PageID162. In claim fifty-three, Petitioner asserts that the appellate court misconstrued his argument, presented in his Rule 26(B) proceedings, relating to the shackles. In claim fifty-four, Petitioner complains that the state appellate court failed to address his argument that the jury verdict forms relating to the charge of aggravated assault constituted plain error. In claim fifty-five, Petitioner complains that the state appellate court failed to review his claim that supplemental jury instructions amounted to incorrect statements of law. Petitioner again complains that he was unable to fully address this issue due to the page limitations in Rule 26(B) proceedings. In claim fifty-six, Petitioner asserts that Ohio's ten page limit on briefs in Rule 26(B) proceedings unconstitutionally denied him a meaningful review of his ineffective assistance of appellate counsel claims. In claim fifty-eight, Petitioner asserts that the Ohio Supreme Court unconstitutionally refused to accept his direct appeal and, in claim fifty-nine, Petitioner asserts that the Ohio Supreme Court unconstitutionally refused to accept his Rule 26(B) appeal.

None of these foregoing claims presents issues warranting federal habeas corpus relief. The United States Court of Appeals for the Sixth Circuit has held that "habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings." *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir.2001) (rejecting as noncognizable in habeas corpus proceedings that claim that Ohio's post-conviction scheme fails to provide defendants

an adequate corrective process for reviewing claims of constitutional violations) (citing *Kirby v. Dutton,* 794 F.2d 245 (6th Cir.1986)). Federal habeas review is not available to attack the sufficiency of post-conviction proceedings, because those proceedings are not related to a petitioner's detention. *Kirby,* 794 F.2d at 247; *see also Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir.2007); *Alley v. Bell,* 307 F.3d 380, 387 (6th Cir.2002). A proper habeas corpus claim "must directly dispute the fact or duration of the confinement." *Kirby,* 794 F.2d at 248 (citing *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973)). A ground for relief that merely challenges the correctness of a state judicial proceeding and does not dispute the detention itself is not cognizable in habeas corpus proceedings. *See Kirby,* 794 F.2d at 247-48.

> A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging postconviction error "is release from confinement, the result of habeas review of the specific issue [ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [ *sic* ] provide a basis for federal habeas relief" (citing *Kirby,* 794 F.2d at 247)); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer,* 484 F.3d at 853. Claims forty-six, forty-eight, fifty through fifty-six, fifty-eight and fifty-nine fail to provide a basis for habeas corpus relief.

**Claim Sixty:**

In claim sixty, Petitioner appears to claim relief based on the summary of the errors alleged in his other claims for relief. Because this Court concludes that none of Petitioner's other claims warrants habeas corpus relief, this claim likewise fails to provide the relief that petitioner seeks. Claim sixty is without merit.

**WHEREUPON**, Petitioner's *Motion to Expand the Record,* Doc. 17, is **GRANTED**, in part, and **DENIED,** in part .

The Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision,

they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

_____s/ Norah McCann King_____
Norah McCann King
United States Magistrate Judge

November 1, 2012